UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | | |
|---|---|---|---|
| Roscoe Chambers, | ) | | |
| Petitioner, | ) | | |
| | ) | No. 19 CV 50247 | |
| v. | ) | Judge Iain D. Johnston | |
| | ) | | |
| Andrew Ciolli,[1] | ) | | |
| Respondent. | ) | | |

## MEMORANDUM OPINION AND ORDER

Petitioner Roscoe Chambers seeks restoration of 41 days good conduct time that he lost after refusing a drug test. For the reasons that follow, his petition [1] is denied. His motion for a report on the status of his case [24] is denied as moot.

## BACKGROUND

Mr. Chambers is an inmate at AUSP Thomson. He is serving a 360-month sentence after being convicted of multiple federal drug offenses in the Southern District of Iowa. *See United States v. Roscoe Chambers*, Case No. 12 CR 71 (S.D. Iowa). According to the Bureau of Prisons website, his projected release date is August 19, 2038.

Mr. Chambers lost 41 days good conduct credit after an incident on December 28, 2018, at his earlier facility, USP Lewisburg. According to a Bureau of Prisons incident report, officer M. Delmonico went to Mr. Chambers cell and told him to "provide a urinalysis," but Mr. Chambers responded, "I'm not peeing in no cup." Dkt. 13-2 at 5. Based on the incident report, Mr. Chambers appeared for an initial hearing before a Unit Disciplinary Committee on December 31, 2018, which then referred the charges to Disciplinary Hearing Officer Brian Chambers (no relation to the petitioner) for a hearing held January 14, 2019. In a written decision, the disciplinary officer found that based on the greater weight of the evidence, Mr. Chambers had committed the prohibited act of refusing to provide a urine sample, and sanctioned him as follows: 41 days loss of good conduct time, 60 days of disciplinary segregation, 1 year loss of commissary privileges, visiting privileges, non-contact only visits, and telephone privileges. Dkt. 13-2 at 12.

In a petition filed under 28 U.S.C. § 2241, Mr. Chambers seeks the return of his 41 days credit. In support, he argues that he was denied good time credits without due process because (1) he was not allowed to present evidence or a witness during his disciplinary hearing; (2) his hearing before the UDC was conducted by one, not two, persons in violation of Bureau of Prisons regulations; (3) video of the incident shows that no correctional staff had a test kit or

---

[1] The warden of AUSP Thomson is now Andrew Ciolli. Pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted as the defendant to this suit.

chain of custody form with him; and (4) no "investigator report" was issued before the UDC hearing in violation of Bureau of Prisons regulations. The petition is now fully briefed.

## ANALYSIS

Persons in the custody of the Bureau of Prisons have a liberty interest in good time credits, and can challenge the loss of good time credits by filing a motion for habeas relief under 28 U.S.C. § 2241. *See Jackson v . Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Although prisoners have due process rights in prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). As a result, a prisoner has received due process if each of the following requirements are met: the prisoner (1) receives written notice of the disciplinary charges at least 24 hours before a disciplinary hearing; (2) has an opportunity to be heard before an impartial decision maker; (3) is able to call witnesses and present evidence that will not be unduly hazardous to safety or correctional goals; (4) receives a written statement of the evidence relied on and the reason for the decision; and (5) receives disclosures of any exculpatory evidence. *Id.* at 564-66.

The disciplinary decision will be upheld as long as it is supported by "some evidence in the record," which is a meager standard. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends."). On habeas review, the court does not reweigh the evidence or determine credibility. *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Rather, the court merely looks to whether there is *any* evidence in the record supporting the disciplinary decision. *See Henderson v. U.S. Parole Com'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (a court can overturn a disciplinary decision only if no reasonable adjudicator could have found the inmate guilty of the offense based on the evidence presented).

A federal prisoner must exhaust his federal administrative remedies before seeking habeas relief in court, but the requirement is not jurisdictional and so is waived if not raised by the defendant. *Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987). The defendant concedes that Mr. Chambers exhausted his administrative remedies. Response [Dkt. 13] at 6.

Before focusing on the four ways in which Mr. Chambers contends he was denied due process, the Court first addresses his argument that defense counsel violated 28 C.F.R. § 50.15 by responding to his petition, and so the response should be disregarded. Specifically, he contends that defense counsel did not obtain authorization from the United States Attorney General to appear for the defendant. In fact, the regulation allows the Attorney General "or his designee" to decide whether to represent a federal employee. *Id.* Other than Mr. Chambers' bald assertion, he points to no evidence that defense counsel's appearance is unauthorized. Nor does the Court have reason to believe that counsel appeared without authorization, or to address the argument further.

    **1.**     **Investigator's Report**

In his first argument, Mr. Chambers contends that the defendant denied him due process by failing to complete an investigator's report before the Unit Disciplinary Committee held its

hearing. In support, he cites to 28 C.F.R. § 541.7, which states that a UDC will review an "incident report" after a staff investigation is complete, and will review it within five working days after it is issued. He also cites to Bureau of Prisons Program Statement 5270.09, which provide implementing instructions for the inmate discipline program established by 28 C.F.R. part 541, and which repeats the requirement that the UDC review the incident report. The incident report attached to the government's response brief shows that Mr. Chambers received a copy on December 28, 2018, the same day as the incident, and that the UDC considered the report and based its decision on the information in that report. Dkt. 13-2 at 5-6. Mr. Chambers has cited to no separate requirement of an investigator's report. In any event, all that due process requires is that Mr. Chambers received timely notice of the disciplinary charges against him, and Mr. Chambers has not disputed that the incident report provided him timely notice.

### 2. UDC Hearing

Next, Mr. Chambers contends that the defendant denied him due process when the UDC conducted a hearing with just one member, in violation of 28 C.F.R. § 541.7(b), which requires two. According to § 541.7(b), the "UDC ordinarily consists of two or more staff." However, according to the implementing instructions for § 541.7(b) in BOP Program Statement 5270.09, "[o]nly one unit staff member is required to hold an initial review when the incident report is required by policy to be referred to the DHO," or Disciplinary Hearing Officer. Incidents involving Greatest or High severity prohibited acts are automatically referred to the DHO, *see* 28 C.F.R. § 541.7(a)(4), and refusing to provide a urine sample is among the Greatest severity prohibited acts, *see* Table 1 Prohibited Acts and Available Sanctions, Bureau of Prisons Program Statement 5270.09. Because Mr. Chambers' incident report involved a Greatest severity prohibited act, the UDC consisting of only a single staff member could refer the disciplinary proceeding to the DHO.

### 3. Witness

Next, Mr. Chambers contends that the defendant denied him due process by refusing him an opportunity to present a witness at his disciplinary hearing. According to the petition, his witness, identified as "Lt.," had direct knowledge of the incident and would have offered favorable testimony, though he does not identify the substance of the favorable testimony. The government responds that Mr. Chambers never requested a witness, as documented on the DHO decision itself, *see* Dkt. 13-2 at 9. and that the witness, whom the defendant identifies as Lt. Kowalchick, did not observe the incident and merely wrote down in the incident report Mr. Chambers' description of the incident.

Although *Wolff* establishes that due process entitles a prisoner to present witnesses at a disciplinary proceeding, it does not entitle the prisoner to "call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). Assuming that Mr. Chambers did not waive his right to present witnesses, testimony from Lt. Kowalchick would have been irrelevant, repetitive, or unnecessary because he merely prepared an incident report, which he prepared after the fact based on what others told him. He did not witness the event and could not have presented first-hand knowledge of what occurred. Mr. Chambers' reply brief does not elaborate on any other testimony Lt. Kowalchuck would

have offered. Accordingly, the absence of testimony from Lt. Kowalchuck did not deny Mr. Chambers due process.

### 4. Video

Finally, Mr. Chambers contends that the defendant denied him due process because video of the incident shows that correctional staff never displayed a cup to collect a urine sample or a chain of custody form, and therefore he cannot have disobeyed an order to provide a urine sample. Mr. Chambers does not contend that he was denied use of the video during his disciplinary proceeding, just that the video does not support the disciplinary decision against him. The video is not in the record. But even if it is consistent with Mr. Chambers' description, it would not establish that the disciplinary decision lacked "some evidence" to support it. Mr. Chambers has cited to no regulation or policy that requires a correctional officer to display a cup or chain of custody form before a prisoner must agree to a urinalysis. And according to BOP's Urine Surveillance and Narcotic Identification procedures, urine samples are to be collected in centralized locations, and that inmates have two hours to comply with a directive to provide a sample. See BOP Program Statement 6060.08 [Dkt. 13-6] at 4 and Attachment A at 1. Given that samples are to be collected at centralized locations rather than individual cells, it is not clear why a correctional officer would need a collection cup and chain of custody form with him or her at the inmate's cell. In any event, Mr. Chambers has not established that he was free to refuse a urinalysis just because an officer did not display a collection cup or chain of custody form. Therefore, even if the video is as described, it would not clear Mr. Chambers.

## CONCLUSION

For the reasons given, Mr. Chambers petition [1] is denied, and this case is closed. Mr. Chambers is advised that this is a final decision ending his case in this Court. If he wants to appeal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Mr. Chambers need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

      To the extent one is required, the Court declines to issue a certificate of appealability. *See* Rule 11 of the Rules Governing § 2254 Cases. Mr. Chambers cannot show that reasonable jurists would debate, much less disagree, with this Court's resolution of his § 2241 petition. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2), and *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Date: March 5, 2021        By: _____
                                      Iain D. Johnston
                                      United States District Judge